LAW OFFICES OF IAN L. MATTOCH

IAN L. MATTOCH    898-0
ian@ianmattoch.com
737 Bishop Street, Suite 1835
Honolulu, Hawai`i  96813
Telephone:  808-523-2451
Facsimile:   808-531-2652

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| KAZUE JOHANSEN; AARON JOHANSEN,<br><br>    Plaintiffs,<br><br>  vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | CIVIL NO. _____<br><br>COMPLAINT |

COMPLAINT

  COME NOW Plaintiffs KAZUE JOHANSEN and AARON JOHANSEN, husband and wife, by and through their attorneys, the Law Offices of Ian L. Mattoch, and hereby state their allegations, averments and claims for relief as follows:

## COUNT I
## MEDICAL NEGLIGENCE

1. This action is brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, as set forth more fully herein.

2. On or about September 19, 2011, Plaintiffs KAZUE JOHANSEN and AARON JOHANSEN, husband and wife ("Plaintiffs"), were residents of the County of Maui, State of Hawai`i. Plaintiffs are currently residents of the City and County of Honolulu, State of Hawai`i.

3. At all times relevant herein, Aaron Altura, M.D. ("Dr. Altura") was employed by the Community Clinic of Maui, Inc. in Wailuku, Hawai`i.

4. At all times relevant herein, Defendant UNITED STATES OF AMERICA ("Defendant U.S.A.") operated the Community Clinic of Maui, Inc. in Wailuku, Hawai`i, as a Federally Supported Medical Center in the County of Maui, State of Hawai`i, and which was engaged in providing medical care and treatment.

5. At all times relevant herein, Dr. Altura was an employee of Defendant U.S.A., through his work at the Community Clinic of Maui, Inc., and was acting within the scope of his employment.

6. On or about September 18, 2013, Plaintiffs each presented an administrative claim to the claims office of the U.S. Department of Health & Human Services ("DHHS"), which is the appropriate federal agency representing Dr. Altura and the Community Clinic of Maui, Inc.

7. On or about March 13, 2014, DHHS issued a denial of Plaintiffs' administrative claims, thereby permitting Plaintiffs to file suit in the United States District Court. See 28 U.S.C. §§ 2675(a) and 45 C.F.R. 35.6(a).

8. The United States District Court for the District of Hawai`i has jurisdiction in this matter under the Federal Tort Claims Act, and venue is proper in the District of Hawai`i because acts and omissions occurred within the District of Hawai`i. See 28 U.S.C. §§ 1346(b), 1391(e) and 1402(b).

9. At all times relevant herein, Dr. Altura, as Defendant U.S.A.'s employee, and while acting within the scope of his employment, held himself out to the public and to Plaintiffs as having and possessing the requisite medical skill and competence to properly care for and treat Plaintiff KAZUE JOHANSEN.

10. On September 19, 2011, Plaintiff KAZUE JOHANSEN was admitted to Maui Memorial Medical Center for a scheduled repeat cesarean section. Plaintiff KAZUE JOHANSEN arrived at the hospital at approximately 0620 hours and a successful delivery occurred at approximately 0840 hours.

11. At all times relevant herein, Dr. Altura was the "on call" physician responsible for Plaintiff KAZUE JOHANSEN's medical care at Maui Memorial Medical Center after the time Plaintiff KAZUE JOHANSEN's own physician performed the cesarean section procedure and was no longer available to provide patient care.

12. After the cesarean, Plaintiff KAZUE JOHANSEN was transferred to the postpartum unit and her care was then attended to by Nurse Kelly Kim, who reported at 1000 hours that all was well with her patient. Postpartum charting began at 1035 hours.

13. At 1919 hours, Nurse Kelly reported that Plaintiff KAZUE JOHANSEN was hypotensive and diaphoretic. At 2000 hours, Nurse James reported that Plaintiff KAZUE JOHANSEN's skin was cool and pale. Her blood pressure was 64/35 and her heart rate was 94. Plaintiff KAZUE JOHANSEN's rhythm was described as tachycardic. Plaintiff KAZUE JOHANSEN was placed on nasal cannula oxygen.

14. At 2010 hours, Nurse James notified Dr. Altura by telephone that Plaintiff KAZUE JOHANSEN had low blood pressure, nausea, increased pulse, and moderate lochia rubra. Dr. Altura ordered 500 ml Lactated Ringers intravenous bolus and intravenous Phenergan as needed. At 2020 hours, Nurse James charted that the physician assistant found Plaintiff KAZUE JOHANSEN was increasingly pale and slightly lethargic. Further assessment revealed that bleeding was heavy with moderate-sized clots. Her blood pressure continued to be low. Plaintiff KAZUE JOHANSEN complained of pain upon bladder palpation. Nurse James inserted a Foley catheter.

15. After receiving the fluid bolus, Plaintiff KAZUE JOHANSEN's blood pressure was 66/36 at 2042 hours, 70/38 at 2045 hours and 73/40 at 2050 hours. A second 500 ml IV fluid bolus was initiated. At 2053 hours, Dr. Altura was updated again by telephone and he ordered Ephedrine 5 mg IV push and a complete blood count.

16. Dr. Altura was notified by telephone at 2139 hours that the hematocrit / hemoglobin levels were 4.6/13.3. Dr. Altura then ordered three units of blood products. Vital signs included a blood pressure of 95/52 and a pulse of 80 when the first unit of packed red blood cells was started at 2226 hours.

17. The physician assistant notified Nurse James at 2351 hours that Plaintiff KAZUE JOHANSEN had felt a gush of fluid from the perineal area. Nurse James observed that all of the sanitary pads were saturated with a large amount of bright red rubra. There was no change in the fundus since the last fundal assessment. Plaintiff KAZUE JOHANSEN verbalized she was more diaphoretic. Nurse James reported continued low blood pressure, even with the blood transfusion her blood pressure was 81/44 (0000 hours).

18. At 0146 hours on September 20, 2011, Plaintiff AARON JOHANSEN, a physician, called the hospital to obtain information regarding his wife's condition. Concerned about the blood pressure readings, Plaintiff AARON

JOHANSEN asked Dr. Altura to come to the hospital to attend to Plaintiff KAZUE JOHANSEN.

19. At 0253 hours, Dr. Altura arrived in the hospital and attended Plaintiff KAZUE JOHANSEN. He summarized Plaintiff KAZUE JOHANSEN's care prior to his arrival as follows: *that at 2100 hours Plaintiff KAZUE JOHANSEN's blood levels for hematocrit/hemoglobin were 4.6/13.3. After receiving a bolus of one liter IV fluids, her diastolic blood pressure was in the 60s to 70s. Plaintiff KAZUE JOHANSEN had received two units of blood and was scheduled for a third transfusion. It was charted that her urine output had been 70 ccs per hour.* Following the summary of care, Dr. Altura ordered a third unit of packed red blood cells and to redraw her labs within two hours following the last transfusion. A bedside ultrasound would be performed to determine if there was intra-abdominal bleeding.

20. At 0400 hours, Plaintiff KAZUE JOHANSEN's blood pressure remained low, and Plaintiff KAZUE JOHANSEN complained of pain. At 0600 hours, Plaintiff KAZUE JOHANSEN's pain level had increased to a five and she was given medication.

21. At or after approximately 1122 hours, Plaintiff KAZUE JOHANSEN's treating physician, Tamarin McCartin, DO advised Plaintiff KAZUE JOHANSEN that given the drop in her hemoglobin and her platelet levels

following her blood transfusions, a dilation and curettage procedure ("D&C") was recommended. Dr. McCartin discussed the procedure and associated risks, which included a possible hysterectomy.

22. Plaintiff KAZUE JOHANSEN was taken to the operating room at 1250 hours. Dr. McCartin removed approximately 500 ml of clots and performed a D&C. Plaintiff KAZUE JOHANSEN continued to have bright red bleeding. A Bakra balloon was placed in the uterus and inflated with approximately 300 ml of water. The cervix was then sutured. These procedures failed to control the bleeding. Since Plaintiff KAZUE JOHANSEN had already received IV Pitocin, Methergine, Cytotec and Hemabate without any success in halting her bleeding, Dr. McCartin decided to proceed with a hysterectomy.

23. Plaintiffs allege that Dr. Altura failed to meet the applicable standards of care for a similarly situated physician under similar circumstances.

24. Plaintiffs allege that Dr. Altura was negligent and did not provide adequate, timely and proper observation, diagnosis and care for Plaintiff KAZUE JOHANSEN, and did not timely and properly respond to communication from staff at the Maui Memorial Medical Center.

25. Plaintiff KAZUE JOHANSEN suffered the loss of her uterus, ovaries and fallopian tubes leading to the start of surgically induced menopause and all of the associated pain and suffering from having to undergo the D&C and

hysterectomy, as a result of the negligence of Dr. Altura, who was at all relevant times employed by Defendant U.S.A. and acting within his scope of employment.

26. Plaintiffs allege that if Dr. Altura properly attended to and cared for Plaintiff KAZUE JOHANSEN, then Plaintiff KAZUE JOHANSEN would not have had to undergo the D&C and hysterectomy performed by Dr. McCartin, and she would have been able to have additional children with her husband.

27. As a direct and proximate result of the negligence of Defendant Altura, Plaintiff KAZUE JOHANSEN sustained severe and permanent injuries, including the loss of her uterus, ovaries and fallopian tubes, suffered serious mental and emotional distress, incurred and will continue to incur medical and rehabilitative expenses, among other items of special and general damages.

## COUNT II - *RESPONDEAT SUPERIOR*

28. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth and repeated herein.

29. At all times relevant herein, Dr. Altura was in the course and scope of his employment as an employee and/or agent of Defendant U.S.A.

30. Defendant U.S.A. is vicariously liable for the negligence of its agents and/or employees acting within the course and scope of their duties under the doctrine of *respondeat superior* or otherwise.

## Count III
### LOSS OF CONSORTIUM / AARON JOHANSEN'S LOSS OF THE ABILITY TO HAVE MORE CHILDREN WITH HIS WIFE

31. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth and repeated herein.

32. As the direct and proximate result of the medical negligence and carelessness as described herein, Plaintiff AARON JOHANSEN, as the husband of Plaintiff KAZUE JOHANSEN, suffered the loss of love, affection, solace, comfort, companionship, society and emotional support of Plaintiff KAZUE JOHANSEN that she would have rendered him except for the extent of her injuries.

33. As the direct and proximate result of the medical negligence and carelessness as described herein, and as a result of Plaintiff KAZUE JOHANSEN's injuries, and the inability of Plaintiffs to have additional natural children, Plaintiff AARON JOHANSEN suffered and continues to suffer serious emotional distress.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendant UNITED STATES OF AMERICA for all general and special damages as shown at the time of trial, as well as the costs of suit, attorneys'

fees, prejudgment and post-judgment interest, and all other relief to which they are entitled.  Plaintiffs contend that the amount of damages as alleged herein falls within the jurisdictional requirements of this Court.

DATED:  Honolulu, Hawai`i, February 13, 2015

/s/ Ian L. Mattoch
IAN L. MATTOCH
Attorney for Plaintiffs